COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Felton
Argued at Alexandria, Virginia


JOHN KEELING

                                                          OPINION BY
v.      Record No. 0913-05-4                      JUDGE LARRY G. ELDER
                                                        JANUARY 24, 2006
ELIZABETH MINTER KEELING


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
James F. Almand, Judge

David D. Masterman (Masterman & Graham, P.C., on briefs), for
appellant.

Christopher W. Schinstock (James Ray Cottrell; Kyle F. Bartol;
John K. Cottrell; Gannon & Cottrell, P.C., on brief), for appellee.


        John Keeling (husband) appeals from a decree granting him a divorce from Elizabeth

Minter Keeling (wife) and effecting an equitable distribution of the parties' property.  Husband's

sole complaint on appeal is that the court calculated the marital share of the equity at too high a

figure, thereby failing to award him a proper return on his contribution of separate property to

the purchase of the marital residence.  We hold the court's method of classifying the increase in

value of the property was not error, and we affirm.  We deny wife's request for an award of

attorney's fees and costs on appeal.

I.

BACKGROUND

        The parties were married on September 7, 1996, and the trial court found they separated

on July 6, 2003.  In June 1997, the parties purchased a residence in Arlington.  It was undisputed

that husband invested a total of $108,439 of his separate property in the acquisition and

maintenance of the home, including a significant lump sum contribution to the down payment ($85,938), a subsequent reduction in principal ($3,000), costs associated with refinancing ($5,881), and mortgage payments made after the separation, which resulted in a reduction in principal of $13,620.

The purchase price of the home was $394,000, and the parties borrowed $315,200 to make the purchase. According to husband, during the course of the marriage, the parties reduced the mortgage obligation by $25,876 but increased it by $17,310 and incurred refinancing costs of $513, resulting in a net marital investment of $9,079. This calculation did not take into consideration the fact that the parties remained jointly liable on the mortgage for the duration of their marriage.

The parties agreed that, as of October 17, 2004, the residence had significantly increased in value and had a fair market value of $825,000. Given a mortgage balance of $309,054, the parties agreed the home had net equity of $515,946.

Husband advocated application of the Brandenburg formula, adopted in Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. Ct. App. 1981), to divide the equity. He contended that based on his separate investment of $108,439 and a net marital investment of $9,079--for a total investment of $117,518--92.3% of the equity, plus the earnings thereon, was his separate property, and 7.7% of that equity, plus the earnings thereon, was marital property. Based on an equal division of what he calculated as the marital share of $39,860, he proposed that wife receive half that sum, $19,930, and that he receive the remainder of the equity, $496,016.

Wife argued that application of the Brandenburg formula would be inequitable on these facts. She proposed a division that would (1) compare husband's separate contributions of $108,439 to the original purchase price of $394,000, yielding a figure of 27.5% separate property contributed, and (2) give husband a share of the $515,946 of equity in the same percentage as his

contribution to the purchase price, 27.5%, for a total separate share of $141,885, including a return of his separate property and earnings thereon. This calculation would leave a marital share of 72.5%, or $374,061, to be divided evenly, with the parties each receiving $187,030. Thus, wife proposed that she receive a total of $187,030 and husband receive a total of $328,915, including his separate property and his half of the marital property.

The trial court ruled in relevant part as follows:

> The Court finds that the Husband contributed $108,439.00 of his separate property in the acquisition of and in various refinances of the property. . . . Therefore, the Court gives the Husband a credit for the amount of his investments from his separate property. The Husband's contribution was 27.5% of the original purchase price. Therefore, Mr. Keeling is awarded 27.5% of the equity, or $141,885, for his separate property contribution. The evidence shows that during the marriage the home gained equity, which is attributable to each party's marital share. During the course of the parties' marriage the value of the marital home increased 109% and its current fair market value is $825,000. The current equity in the marital property is $515,496. After deducting the Husband's share based on his personal contribution, the marital share in the home is $374,061.
>
> . . . The Court finds that use of the <u>Brandenburg</u> formula in this case would be harsh and inequitable. If applied, the formula would result in the Husband receiving $496,000 and the Wife receiving $19,930 of the equity in the house. The Court holds that the balance of the equity in the home, after considering the Husband's contribution from separate property, should be divided equally between the parties.

Husband noted this appeal. Wife requests an award of attorney's fees and costs incurred on appeal.

- 3 -

II.

ANALYSIS

A.

EQUITABLE DISTRIBUTION

On appeal from an equitable distribution award, we review the evidence in the light most favorable to the party prevailing below. See, e.g., Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

Settled principles "provide that where separate property can be retraced from commingled property, the increased value in that separate property is presumed to be separate, unless the non-owning spouse proves that contributions of marital property or personal effort caused the increase in value." Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998) (en banc) (citing Code § 20-107.3(A)). Here, the parties agree as to the amount of husband's separate property contribution, and wife does not contend that she is entitled to share in the increase in value of that separate property. The parties merely dispute what method should be applied to calculate the amount by which husband's separate property *increased* in value.

"We have not adopted an exclusive method for determining how to apportion the increase in value [of a hybrid asset as between marital and] retraced separate property." Id. at 753, 501 S.E.2d at 454. "In Hart v. Hart, 27 Va. App. 46, 65-66, 497 S.E.2d 496, 505 (1998), we approved the '[Brandenburg] formula' as one method for ascertaining the value of the separate and marital components of hybrid property in relation to the original contributions," but we have

emphasized that "other methods may be equally acceptable." Id.; see Hart, 27 Va. App. at 66 n.4, 497 S.E.2d at 505 n.4 ("By approving [the Brandenburg] formula, we do not intend to imply that this is the only acceptable method of tracing and determining the marital and separate property interests of hybrid property.").

The Brandenburg formula "'establishe[s] a relationship between the nonmarital contribution and the total contribution, and between the marital contribution and the total contribution. These relationships, reduced to percentages, [are then] multiplied by the equity in the property at the time of distribution to establish the value of the nonmarital and marital [shares],'" including appreciation or depreciation thereon. Hart, 27 Va. App. at 65, 497 S.E.2d at 505 (quoting Brandenburg, 617 S.W.2d at 872). The Brandenburg formula defines "'nonmarital contribution'" as "'the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable nonmarital funds in the reduction of mortgage principal, and/or the value of improvements made to the property from such nonmarital funds.'" Id. (quoting Brandenburg, 617 S.W.2d at 872). It defines "'marital contribution'" as "'the amount expended after marriage from other than nonmarital funds in the reduction of mortgage principal, plus the value of improvements made to the property after the marriage from other than nonmarital funds.'" Id. (quoting Brandenburg, 617 S.W.2d at 872).

A strict application of the Brandenburg formula does not take into account the extent to which the parties are obligated on a loan used to purchase the property; it considers only the degree to which payment on that loan reduces the loan principal, thereby resulting in the acquisition of equity, marital or nonmarital, in the property. See Hart, 27 Va. App. at 65-66, 497 S.E.2d at 505 (discussing Brandenburg formula in detail). In a case such as this one, in which (1) hybrid property is obtained by means of *both* (a) a significant down payment of separate property and (b) a significant joint mortgage; (2) the equity in the property increases significantly

- 5 -

due primarily to market forces; and (3) no evidence establishes that either the separate down payment or the marital loan contributed disproportionately to the couple's ability to acquire and hold the property, a court does not abuse its discretion in concluding that a strict application of the Brandenburg formula would yield an unfair result.

Two hypotheticals make the propriety of this holding particularly clear. Consider, for example, a case in which one spouse contributes the down payment from separate funds and, to cover the balance of the purchase price, the parties obtain a loan that requires payment of interest only for the marital portion of the loan term. Under a strict application of the Brandenburg formula, any increase in equity in the property is wholly separate property, despite the fact that marital funds were used to hold the property for the period during which it appreciated; none of the increase in equity is classified as marital because the principal loan balance has not been reduced. Applying the Brandenburg formula under these circumstances would result in a windfall to the party whose separate funds were used for the down payment and would place no value whatever on the fact that the parties' joint obligation on the interest-only loan allowed the parties to retain the asset for a period during which the appreciation occurred. This is a result a chancellor may choose, in the exercise of his discretion, to reject.

Also illuminating is the result that could obtain if the property decreased in value to a point lower than the balance of the joint mortgage obligation. In the event of foreclosure, the lien holder could seize other, unsecured marital assets to satisfy a deficiency judgment. If the joint loan obligation causes the marital estate to bear the financial risk of a declining market, so too should the marital estate be permitted, in the discretion of the trial court, to enjoy the financial benefits of that joint loan obligation when market forces cause the hybrid asset to appreciate.

Although we have not explicitly considered, in any prior case, how to apportion the increase in value of a hybrid asset acquired with both separate funds and a joint loan, we did so implicitly in <u>Martin</u>, sitting *en banc*, in which we approved a calculation that considered the amount of funds "[t]he parties jointly borrowed . . . and applied . . . toward the purchase price" of the marital residence.  <u>Martin</u>, 27 Va. App. at 749, 751-54, 501 S.E.2d at 452, 454.  <u>Martin</u> focused on whether the wife was entitled to share in the increase in value of the husband's separate investment of $26,634.22, but as a necessary predicate to that determination, we held the trial court was obligated to apply "the [<u>Brandenburg</u>] method, or another acceptable method, to initially calculate the increase in value of husband's separate property share of the marital residence."  <u>Id.</u> at 751-54, 501 S.E.2d at 454.  In applying the <u>Brandenburg</u> method to calculate the increase ourselves, we used the trial court's figure for total contributions, which included $30,000 the parties had jointly borrowed and applied toward the purchase price.[1]  <u>Id.</u> at 752-54 & n.3, 501 S.E.2d at 454 & n.3.  Thus, we considered *the fact and amount of the loan*, not just the amount of marital funds used to reduce the loan principal, in calculating the marital contribution.  Although our decision in <u>Martin</u> does not indicate whether the loan was secured by the marital residence, we do not think this potential distinction requires a different result.

Here, like in <u>Martin</u>, the trial court considered the parties' joint loan obligation in calculating the marital contributions and total contributions to acquisition of the marital residence.  In determining that husband's contribution of $108,439 of separate property to the

---

[1] We expressly stated in <u>Martin</u> that "[t]he trial court should have applied the [<u>Brandenburg</u>] method, or another acceptable method, to . . . calculate *the increase in value* of husband's separate property share of the marital residence."  <u>Martin</u>, 27 Va. App. at 754, 501 S.E.2d at 454 (emphasis added).  We did not purport to rely on the <u>Brandenburg</u> formula for its definition of marital property or the conclusion, not challenged on appeal, that the $30,000 the parties jointly borrowed and applied toward the purchase price of the marital residence was martial property.  <u>Id.</u>  Thus, our holding in <u>Martin</u> does not include an implicit or explicit ruling that the <u>Brandenburg</u> formula takes into consideration a joint mortgage obligation on the property to be valued.

acquisition of the marital residence totaled 27.5% of the sums used, the trial court used the purchase price of $394,000.[2]  Here, like in <u>Martin</u>, only one spouse contributed a significant amount of separate property to the acquisition of the hybrid property, and the parties were jointly obligated on a significant loan.  No evidence established that either husband's separate investment or the parties' joint investment, including the loan obligation, contributed disproportionately to the parties' ability to acquire and hold the property for six years until they separated and husband began making the mortgage payments from his separate funds.  Thus, the court was entitled to conclude that applying the <u>Brandenburg</u> formula, without considering the parties' joint loan obligation as a creditable contribution to acquiring and maintaining the property long enough to enjoy a significant increase in equity due primarily to market forces, "would be harsh and inequitable."  <u>Cf.</u> <u>von Raab v. von Raab</u>, 26 Va. App. 239, 248-49, 494 S.E.2d 156, 160-61 (1997) (where wife "assumed [joint] liability for [separate] debt" of husband that was secured by the marital residence "to ensure that the bank would not foreclose on what was both husband's 'separate' property and the marital home," holding husband's separate interest in marital residence "was no longer retraceable" and was transmuted into marital property, thereby recognizing value of wife's obligation on loan).  We conclude the trial court did not abuse its discretion in so holding.

B.

ATTORNEY'S FEES AND COSTS ON APPEAL

Wife requests an award of attorney's fees and costs incurred on appeal to be paid her by husband or, in the alternative, that we remand to the trial court "to assess and/or determine an award of and/or sanction concerning same."  We deny the request.

> The rationale for the appellate court being the proper forum
> to determine the propriety of an award of attorney's fees for efforts

---

[2] $108,439/$394,000=.275.

> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In this context, and upon consideration of the record in this case, we hold husband's position was not so unreasonable as to entitle wife to an award of attorney's fees and costs incurred in this appeal. "[W]e find the litigation addressed appropriate and substantial issues and that [husband did not] generate[ ] unnecessary delay or expense in pursuit of [his] interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, the request for an award of fees and costs on appeal is denied.

III.

For these reasons, we hold the court's method of classifying the increase in value of the property was not error, and we affirm. We deny wife's request for an award of attorney's fees and costs on appeal.

Affirmed.