COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Beales
Argued at Chesapeake, Virginia


KIMBERLY J. HOSIER

MEMORANDUM OPINION[*] BY
v.      Record No. 0767-06-1                    JUDGE D. ARTHUR KELSEY
                                                FEBRUARY 20, 2007
CHARLES S. HOSIER


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Cynthia L. Ewing (Domingo J. Rivera; The Ewing Law
Firm, P.C., on briefs), for appellant.

Jill Roseland Harris (Kaufman & Canoles, P.C., on brief),
for appellee.


Appealing a final divorce decree, Kimberly J. Hosier argues that the decree undervalued

her separate interest in the marital home.  She also contends the trial court ordered a premature

sale of real and personal property, miscalculated spousal and child support, abused its discretion

in failing to award attorney fees, and unlawfully held her in contempt of court.  Finding these

arguments either waived or meritless, we affirm.

I.

On appeal, we consider the evidence "in the light most favorable to the prevailing party,

granting it the benefit of any reasonable inferences."  Congdon v. Congdon, 40 Va. App. 255,

258, 578 S.E.2d 833, 835 (2003) (citations omitted).  "That principle requires us to discard the

evidence of the appellant which conflicts, either directly or inferentially, with the evidence

presented by the appellee at trial."  Id. (citations and internal quotation marked omitted).

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the record shows Kimberly and Charles Hosier married in 1997 and separated in 2004. They had two children. A couple of years into the marriage, wife contributed $19,159 of separate funds to the purchase of a home. She and husband financed the remainder of the $428,000 purchase price with first and second mortgages. The parties later increased and refinanced that debt with an equity line of credit secured against the home.

Prior to trial, husband submitted a proposed trial exhibit (exchanged between counsel pursuant to the pretrial scheduling order) asserting that he, not wife, made the initial, separate contribution and that his separate interest should be calculated using the Brandenburg formula.[1] Wife submitted a similar exhibit claiming she made the initial contribution and should receive the benefit of the Brandenburg formula. About a week before trial, husband's counsel received discovery responses providing documentary evidence proving the down payment came from wife's separate funds. At trial, husband acknowledged wife's allegation as accurate and argued that, under such circumstances, the home equity should be evenly divided between them.

The trial court rejected wife's argument for a Brandenburg calculation, concluding that it "would yield a result that is inequitable, unfair and unjust." The court also refused to simply ignore wife's separate contribution, as husband suggested with his request for a 50/50 split. Fashioning a classification and distribution remedy between the two competing positions, the court ordered the home sold and the appreciation in the value of the home apportioned between the parties pursuant to a "net percentage gain" formula. Under this formula, the property would

> be listed with an agent agreed to by the parties within 10 days of
> the entry of this Decree. The agent will forthwith prepare a "good

---

[1] We have held "that the Brandenburg formula is an acceptable method of tracing and determining the value of the marital and separate property components of hybrid property under Code § 20-107.3(A)(3)." Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) (discussing the method employed and adopted in Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. Ct. App. 1981)). It is not, however, the only acceptable method. See Keeling v. Keeling, 47 Va. App. 484, 490, 624 S.E.2d 687, 689 (2006).

faith" estimate of the net proceeds of the sale at its listed price. Either party may compel the other party to accept any offer which yields 95% of the projected net proceeds of the "good faith" estimate. Upon closing of the sale, the actual net proceeds will be divided as follows: The parties will determine the "net gain percentage" by comparing the purchase price to the net proceeds of the sale. Plaintiff's [wife's] pre-marital contribution of $19,159.00 would be increased by that percentage increase. That amount would be deducted from the net proceeds and credited to Plaintiff. The remaining balance would be divided equally on a 50-50 basis.

Final Decree of Divorce, Mar. 8, 2006, at 4-5.

The trial court also rejected wife's request for time to put together a purchase plan to buy out husband's interest in the home, thus allowing her and the children to continue to live there. The evidence, the trial court found, proved it "would be highly unlikely" she could raise the funds necessary to purchase husband's interest and would be, in any event, "unnecessarily time consuming" to grant her request.

At trial, the parties advised the court that a dispute over "about four items" of personal property would be addressed through mediation. The trial court accepted this representation and included a provision in the final decree giving the parties 60 days to mediate an agreed division of all disputed personal property. If mediation failed to resolve the contest, the decree ordered that the personal property be sold at public auction and the proceeds divided evenly between the parties.

The trial court ordered that husband pay spousal and child support. The spousal support award would be for a defined duration, $2,500 per month for 30 months, because of the relatively short term of the marriage and wife's ability to find employment in the future. The court heard conflicting evidence on husband's earning capacity, a problem caused by his employment as a pilot for a bankrupt airline.

The final divorce decree required both parties to pay their own attorney fees, rejecting wife's claim that she should be awarded fees for successfully bringing the divorce suit. In

- 3 -

denying this request, the trial court noted the prior "orders of the Court and the awards as granted" for the benefit of wife.

Following the entry of the final divorce decree, the trial court found wife in contempt for violating the directive to sell the home through an agent "agreed to" by the parties. The court held that it had, at an earlier hearing conducted on February 17, 2006, orally ordered wife to participate in the process for choosing an agent and to submit two proposed names by February 20. Instead of complying, wife fired her counsel and refused to endorse an order prepared by husband's counsel.

II.

A. VALUATION OF WIFE'S SEPARATE INTEREST IN THE MARITAL HOME

On appeal, wife asserts two reasons for claiming the trial court undervalued her separate interest in the marital home. We find neither persuasive.

*Equitable Estoppel*. Asserting equitable estoppel principles, wife claims the trial court had no choice but to employ the Brandenburg formula because she relied to her detriment on husband's submission of a pretrial exhibit employing that formula, albeit mistakenly, in his favor. We disagree.

Absent proof of fraud or deception, equitable estoppel requires a showing that one party detrimentally relied on a *representation* made by another. See Waynesboro Village v. BMC Properties, 255 Va. 75, 82, 496 S.E.2d 64, 68 (1998). The only representation here was husband's pretrial submission of an exhibit he might offer at trial. Nothing about that exhibit represented that, if the factual assumption underlying it failed, husband would still insist on its admission (directly contrary to his own interests) and thereby relieve wife from the advocacy task of persuading the trial court to use the Brandenburg formula.

Even if such a representation had been made, wife did not show any detrimental reliance on it. She advocated at trial for the Brandenburg formula, the most favorable legal theory available to her. She could have done nothing better had she known before trial that husband would later withdraw his proposed exhibit. Perhaps so, wife argues, but she may have changed her litigation strategy if she had known husband would not concede the applicability of Brandenburg. She proffered no alternative stratagems to the trial court, however. Nor did she ever ask for a recess of the trial or for leave to keep the evidence open so she could reconsider her litigation strategy. When asked at oral argument on appeal to hypothesize how her trial strategy might have changed, she could offer no answer. No showing of detrimental reliance, therefore, has been made either at trial or on appeal.

Under such circumstances, we hold that wife did not present to the trial court "clear, precise and unequivocal evidence," Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 640, 593 S.E.2d 568, 574 (2004) (citation omitted), sufficient to require the application of the equitable estoppel doctrine. The doctrine "is applied rarely and only from necessity," Webb v. Webb, 16 Va. App. 486, 495, 431 S.E.2d 55, 61 (1993) (citation omitted), and the trial court in this case did not err in finding it inapplicable here.

*Intrinsic Fairness.* Wife also challenges the intrinsic fairness of the trial court's decision. On this issue, we reject wife's argument mostly because we disagree with her interpretation of the trial court's decision. Wife reads the phrase "actual net proceeds" to mean the gross sale price reduced by both the transactional costs (closing costs, attorney fees, and the like) *and* the mortgage indebtedness. This interpretation fails to take into account the trial court's use of the phrase "projected net proceeds" one sentence earlier. The "projected net proceeds" differ from the "actual net proceeds" only in that the agent estimates the former based upon a hypothetical sale but calculates the latter based upon an actual sale.

- 5 -

The trial court used the "projected net proceeds" concept to define the circumstances in which either husband or wife could force the other to accept a third-party's purchase offer. "Either party may compel the other party," the court decreed, "to accept any offer which yields 95% of the projected net proceeds of the 'good faith' estimate" made by the real estate agent based on the net proceeds of a sale at its listed price. Under wife's interpretation, the compulsory offer must yield 95% of the sellers' *equity* (taking into account the various lienholder interests).

We think the better interpretation is that the compulsory offer must yield 95% of the projected net proceeds of the sale without consideration of any secured debt. A third-party buyer would not make a purchase price offer based on the sellers' equity, a highly variable figure which the buyer may or may not know anything about. Nor is it likely the trial court intended to overly complicate the compulsory acceptance provision by separating the calculation of the non-equity portion of the net sales proceeds (for which only a 100% offer could suffice) from the equity portion of the net sales proceeds (for which a 95% yield would suffice). Rather, the trial court sought only to eliminate the impact of a commonly negotiated variable — the allocation of transactional costs.

For these reasons, we conclude wife's challenge to the trial court's valuation decision misinterprets the decision as being more disfavorable than it actually is. Using a consistent meaning for the phrase "net proceeds," the decree starts the calculation of wife's separate interest with the "actual net proceeds" — meaning the gross sale price less the sellers' transactional costs. This figure would then be compared to the initial purchase price paid by husband and wife to arrive at a "net gain percentage," the home's appreciation over the term of the marriage. That appreciation percentage would be applied to the wife's separate contribution of $19,159, giving it exactly the same return on investment she would have had if she had purchased another asset

worth $19,159 with a similar appreciation in value. Under the decree, wife's separate interest would then be given to her directly out of the actual net proceeds at closing.[2] The remaining value (representing the marital interest less the lienholder debt balance) would be divided evenly between the parties.

The trial court returned wife's separate interest with the same percentage increase enjoyed by the total investment, thus recognizing wife's role in purchasing the asset. The marital interest in the home likewise received the benefit of market appreciation, thus recognizing the costs associated with holding the investment (a precondition to its appreciation) during the term of the marriage — including debt maintenance, which is mostly interest in the early stages of the amortization schedule, as well as durational costs like insurance premiums and real estate taxes. In this way, the trial court's methodology prudently balanced the financial expectancies related to capital acquisition costs (supported entirely by wife's separate interest) and asset retention costs (supported entirely by marital interests).

The trial court thus determined wife's separate property, although commingled into newly acquired property, was adequately traced, see Code § 20-107.3(A)(3)(e), and that she was entitled to "the value of the contributed property." See Code § 20-107.3(A)(3)(g). The court then found that the percentage increase in value fairly attributable to wife's separate investment matched the percentage increase in the market value of the home. See Martin v. Martin, 27 Va. App. 745, 754, 501 S.E.2d 450, 454 (1998) (requiring trial courts to "calculate the increase in value" of the "separate property share of the marital residence").

---

[2] Given the appreciation in the value of the home, the net proceeds of the sale will amply cover both wife's separate share and any indebtedness owed to lienholders. Consequently, this case does not present a situation where the separate interest holder must compete with third-party lienors over insufficient funds.

The trial court's decision, as we read it, cannot be fairly criticized as an abuse of discretion.  As the trial court observed, its discretion was not limited to applying the Brandenburg formula in cases in which doing so would produce an inequitable result.  In taking this approach, the trial court's reasoning presaged our holding in Keeling v. Keeling, 47 Va. App. 484, 624 S.E.2d 687 (2006), which eschewed the common, but mistaken, view of Brandenburg as the exclusive method of valuing separate interests in appreciating assets. [3]

### B.  THE TIMING OF THE SALE OF THE MARITAL HOME

Wife also challenges the trial court's finding that her "request to purchase the property would be highly unlikely and unnecessarily time consuming."  On this basis, the court ordered the home to be immediately sold on the open market.

Under Code § 20-107.3(C), a trial court has wide discretion either to order the sale of marital property or to permit one of the parties to buy out the other's share.  We review the trial court's decision on this issue under the abuse-of-discretion standard, which "if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'"  Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (quoting Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 754 (1982)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).  Only on matters in which "reasonable jurists could not differ can we say an abuse of discretion has occurred."  Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (citation omitted).

---

[3] Our interpretation of the trial court's decision necessarily addresses wife's assertion that the valuation model was arbitrarily manipulated by the refinancing and equity line-of-credit loans taken against the property during the term of the marriage.  As we construe it, the valuation model gave the debt/equity ratio no role in the calculation of wife's separate interest.  To the extent equity in the home was liquidated during the marriage through refinancing or draws on secured lines of credit, this diminution affected the distributable equity value only *after* wife recovered her appreciated separate interest.

It cannot be said here that the trial court abused its discretion. Despite wife's stated desire to retain the marital home, she provided limited evidence in support of her ability to do so. At trial, she spoke of the possibility of obtaining funds from her mother who had expressed some willingness to help buy husband's share of the home. "She is open to that," wife testified, and "I would like for that to happen." The trial court, however, understandably found this evidence vague and unpersuasive. Given the magnitude of the indebtedness to be assumed,[4] the court acted within its factfinding discretion in concluding wife did not possess the ability to purchase the home in a timely manner. It necessarily follows that the court likewise did not err in ordering that the home be sold on the open market promptly after the entry of the final divorce decree.

### C. PUBLIC AUCTION OF PERSONAL PROPERTY

The trial court's final decree gave the parties, at their joint request, 60 days to mediate an agreed division of "about four items" of disputed personal property.[5] If mediation failed to resolve the dispute, the decree ordered that the personal property be sold at public auction and the proceeds divided evenly between the parties.

The only objection to this provision raised in the trial court was wife's assertion that this topic was not "subject to the Court's jurisdiction" because the parties "agreed they would resolve such disputes through mediation or otherwise, and therefore, that matter is decided." Limiting

---

[4] See generally Bomar v. Bomar, 45 Va. App. 229, 236, 609 S.E.2d 629, 633 (2005) (noting that "Code § 20-107.3(C) empowers the trial judge to order, as a condition of transferring jointly owned marital property, that the receiving party 'assume any indebtedness secured by the property'" so as to "not leave the other party at risk of financial ruin if the receiving party is not financially responsible").

[5] Wife's post-trial brief, accepted by the trial court as a substitute for closing argument, represented that the parties "agreed" that they would "divide *their* personal property (household items, furniture, and equipment) through mediation . . . ." (Emphasis added). The trial court no doubt understood the expression "their" property to mean marital property. Likewise, the need to "divide" the property connotes an agreement on the distribution, not classification, of such property.

our answer to this question,[6] we hold that the issue does not present a jurisdictional question of any kind.  See generally De Avies v. De Avies, 42 Va. App. 342, 345, 592 S.E.2d 351, 352 (2004) (*en banc*) (explaining "the subtle, but crucial, difference between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case" (citation omitted)); see also Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 241-42, 629 S.E.2d 721, 723 (2006).  Whether or not the parties resolved the personal property issue "through mediation or otherwise," the trial court retained jurisdiction under Code § 20-107.3 to distribute marital personal property in the event the parties failed to accomplish that task voluntarily.

### D.  SPOUSAL & CHILD SUPPORT CALCULATIONS

Wife challenges the trial court's calculation of spousal and child support awards, claiming they rest upon an understated estimate of husband's monthly income to be $11,092.14.  Wife also contests the trial court's spousal support award, arguing the trial court failed to weigh properly the governing factors outlined in Code § 20-107.1(E).  We find no merit in either argument.

At a hearing after trial, but before issuing the final decree, the court took additional evidence on husband's income.  This additional hearing was due to a renegotiated "Letter of Agreement" between the bankrupt airline and the Air Line Pilots Association.  Among other things, the new agreement included a 23.9% pay cut and the elimination of overtime pay.  Even

---

[6] In her appellate brief, wife argues that the trial court had no authority to order the public auction of the personal property because doing so (i) went beyond the oral ruling delivered by the trial court at the equitable distribution hearing, and (ii) violated the trial court's preliminary duty, yet unfulfilled, to classify the personal property.  The record reveals that neither of these two assertions was made in the trial court and, thus, cannot be successfully raised for the first time on appeal.  Under Rule 5A:18, we will not consider "an argument on appeal which was not presented to the trial court."  Budnick v. Budnick, 42 Va. App. 823, 843, 595 S.E.2d 50, 60 (2004) (citation omitted).

accepting this evidence at face value, wife argues, the "'math' adopted by the trial court does not add up." Appellant's Br. at 20. Without arguing income should be imputed to husband, wife argues simply that a 23.9% pay cut could not reduce a monthly income from $16,115 to $11,092.14. We disagree with wife's implicit assertion that the trial court needed to base the current income calculation on husband's past income.

Given the newly negotiated employment agreement, the trial court started the income calculation from scratch. The court accepted husband's representation that he worked an average of 81 hours per month. The new employment agreement set husband's hourly rate at $136.94 and disallowed overtime pay. Multiplying the hours times the rate, the court concluded husband's anticipated monthly pay to be $11,092.14.[7] "If it changes in six months or three months or two years," the trial court noted, then "there is action that can be taken by counsel to take care of that."

"We will reverse the trial court only when its decision is plainly wrong or without evidence to support it." Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997)). Here, husband's testimony and the terms of his new employment agreement support the trial court's factual finding as to his income.

Wife's challenge to the trial court's consideration of the statutory factors governing spousal support under Code § 20-107.1 likewise fails. On this issue, the court found wife had no income at the time of trial but was "receiving education to improve herself" pursuant to an understanding of the "parties prior to the separation." A defined-duration award, the court reasoned, was appropriate given the "good health and age of the wife and her ability to generate

_____

[7] This figure excludes husband's per diem expense reimbursement paid at $1.85 per hour (averaging $389 per month).

income as a result of her education," which included a degree in architecture from Virginia Polytechnic Institute. The court also took into account the "relatively short duration of the marriage." The trial court thus identified several subsection E factors as the "basis for the nature, amount and duration" of the award. See Code § 20-107.1(F).

As we have often said, "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (citation omitted). The trial court is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). "On appeal, a trial court's decision on this subject will not be reversed 'unless there has been a clear abuse of discretion.'" Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (citation omitted). Given the evidence in this case, we cannot find the trial court's support award to be an abuse of discretion.

### E. DENIAL OF ATTORNEY FEES TO WIFE

Whether to award attorney fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003)). "Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" Id. (citation omitted).

Our review of the record reveals ample grounds for denying attorney fees to wife. Prior to trial, the court had to compel wife to reply to discovery, to provide proof she had attended a court-ordered parent education seminar, and to attend a mediation orientation session in compliance with its mediation order. Just prior to trial, wife moved for a continuance — a

request the trial court denied. Wife also failed to comply with a pretrial scheduling order requiring counsel to "exchange 15 days before trial a list specifically identifying each exhibit . . . and a list of witnesses proposed to be introduced at trial." Pretrial Order, Apr. 29, 2005, at 2. Given these circumstances, the trial court did not abuse its discretion in denying wife an award of attorney fees.

### F. ORDER FINDING WIFE IN CONTEMPT

Finally, wife asserts the trial court erred in finding her in contempt of court. The contempt finding stems from two orders: one delivered orally from the bench, the other written into the final divorce decree. The trial court issued an oral order at a hearing on February 17, 2006, directing wife to provide the names of two real estate agents to husband by 5:00 p.m. on February 20, 2006. Husband's counsel, the court instructed, would then randomly select from wife's two recommended agents and two others suggested by husband.[8] Instead of complying with the court's directive, wife fired her counsel and refused to endorse the written order prepared by husband's counsel for presentation to the court.

Meanwhile, the trial court entered a final divorce decree directing both parties, within 10 days of the decree, to list the home for sale "with an agent agreed to" by the litigants. At a later hearing on March 31, 2006, the court found wife in contempt for violating its previous order delivered from the bench on February 17 — which placed her in further breach of the March 8 decree requiring the parties to list the property with the agent for sale. The court also entered the written order previously circulated, albeit unsuccessfully, to wife's counsel for endorsement.

---

[8] Wife suggests on brief that the deadline in the decree somehow superseded the earlier deadline (February 20) imposed by the court in its oral order of February 17. The deadlines, however, address two separate requirements. The February 20 deadline required wife to provide husband's counsel with a list of two suggested agents. The later 10-day deadline set by the decree required the parties to *list* the property for sale through the previously chosen agent.

- 13 -

Wife characterizes the court's contempt finding as an improper *nunc pro tunc* ruling punishing her for "violating requirements that did not exist at the time of the ruling." Appellant's Br. at 26. By this, she apparently means that no contempt could logically exist because her allegedly contemptuous behavior preceded the March 31 written order. This argument, however, misapprehends the trial court's decision. The court found wife in contempt for violating its February 17 *oral* order (which required compliance no later than February 20). This disobedience placed her in further contempt of the final decree issued on March 8. The trial court did not find wife in contempt for violating its March 31 written order, which simply put in print the oral order previously made from the bench.[9]

Trial courts have authority to make oral orders from the bench. If sufficiently specific, an oral order may be enforced through the court's contempt powers.[10] Contempt powers apply to a court's "oral orders, commands and directions" no less than to its written orders. Robertson v. Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943); see also Newell v. Dep't of Mental Retardation, 843 N.E.2d 1084, 1099 (Mass. 2006) ("Oral orders may, of course, support a contempt finding."). The entry of a later written order does not affect the enforceability of an oral order from the bench. See generally First Midwest Bank/Danville v. Hoagland, 613 N.E.2d 277, 284 (Ill. App. Ct. 1993) (holding that, where a litigant understands an oral order to have immediate effect, he "may not escape punishment for contempt merely because the order was not

---

[9] Wife also raises Rule 1:1, claiming the trial court lacked jurisdiction to enter the March 31, 2006 *nunc pro tunc* order because more than 21 days had passed since the entry of the final divorce decree on March 8, 2006. Rule 1:1, however, does not apply to contempt findings after the entry of the final divorce decree. See Code § 20-107.3(K)(2).

[10] In this respect, oral orders are no different than written orders for contempt purposes. "As a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Ange v. York/Poquoson Dep't of Soc. Servs., 37 Va. App. 615, 627, 560 S.E.2d 474, 480 (2002) (citations omitted).

reduced to writing"); 17 Am. Jur. 2d Contempt § 113, at 489 (2004) (citing, *inter alia*, Robertson, 181 Va. at 537, 25 S.E.2d at 359). Were it otherwise, a litigant could disobey an oral order with impunity and immunize himself from punishment by delaying the entry of the written order until after the contemptuous behavior has run its course.

For these reasons, the trial court did not err in finding wife in contempt for violating its February 17 oral order, thus placing her in further contempt of the court's final decree issued on March 8.[11]

III.

In sum, we hold the trial court (a) reasonably calculated the value of wife's separate interest in the marital home, (b) did not err in ordering the home sold on the open market, (c) had jurisdiction to require the sale of personal property, (d) acted within its factfinding discretion in awarding child and spousal support, (e) properly declined wife's request for an award of attorney fees, and (f) did not abuse its discretion in finding wife in contempt.

Affirmed.

---

[11] On brief, wife also suggests husband did not file an appropriate show-cause notice in advance of the hearing. Wife, however, did not object at the hearing on this ground. We do not address this contention. See Rule 5A:18; see also Hoagland, 613 N.E.2d at 287 ("An alleged contemnor may waive formal written notice by voluntarily appearing in court and defending against the charge.").