UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued by videoconference

SAMANTHA ASHLEY SCOTT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1338-22-4            JUDGE ROBERT J. HUMPHREYS
                                                    OCTOBER 10, 2023
RANDY LYNN SCOTT


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

Ann M. Callaway (Ann M. Calloway, P.C., on briefs), for appellant.

Monica J. Chernin (Law Offices of Monica J. Chernin, P.C., on
brief), for appellee.


Samantha Ashley Scott (wife) appeals a final decree of divorce from Randy Lynn Scott

(husband). Wife challenges the equitable distribution award of the marital residence, contending

that the circuit court erred in valuing the property and calculating the parties' respective shares of

the marital equity in the property.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most

favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Starr v.*

*Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

The parties married in February 2016. During the marriage, in May 2016, husband received

a gift of unimproved land, located at 15041 Amos Lane, Culpeper, Virginia 22701 (the Culpeper

property), and the deed to the property listed only husband's name. The tax assessment of the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

property in 2016 was $51,600. In October 2016, husband signed a contract with a contractor to construct a home on the unimproved land, and husband closed on the mortgage for the home in the amount of $211,200 in March 2017. The contract to build the home was in husband's name only. In August 2019, husband refinanced the mortgage in his name only, at which time the mortgage balance was $203,912.57. During the marriage, husband spent approximately $100,000 to upgrade the appliances and improve the driveway. Husband also remodeled the basement and built a fourth bedroom and hair salon in the home for wife.

The parties separated in March 2020. Following the separation, husband again refinanced the mortgage, at which time the mortgage balance was $206,158. The refinance increased the mortgage to $264,000, and husband used a portion of the funds from the refinance to pay for two recreational vehicles. Post-separation, husband made improvements to the latticework under the deck, insulated the garage, added a carport to the side of the garage, added gravel to the driveway, and added fencing to the property.

Wife filed a complaint for divorce in May 2021. The parties agreed on the distribution of all the marital property, except the Culpeper property. Husband paid wife $22,500 for her share of the uncontested marital property. The parties agreed that husband would pay spousal support to wife at $500 a month for a period of 12 months. Finally, the parties agreed that husband would pay $5,000 of wife's attorney fees.

At trial, on June 3, 2022, the equitable distribution of the marital equity in the Culpeper property was the only remaining issue between the parties. Husband moved for an alternate valuation date of February 2020 for the Culpeper property, because following the parties' separation, "the value of real estate has increased exponentially," which husband argued "would lead to a substantial windfall" to wife, as well as a "significant detriment" to husband. Wife opposed husband's motion, arguing that he failed to advance "any legal argument."

The circuit court heard evidence that the mortgage was titled solely in husband's name and had a balance of approximately $258,500. Wife testified that the parties temporarily separated in 2017 following an incident of domestic violence and that the circuit court nolle prossed the criminal charges against husband. Wife had an extramarital affair during the separation. During the marriage, husband was the primary wage earner, earning $90,000 annually as a National Park Service employee. Wife earned $30,000 annually as a hairdresser. Husband built wife a salon in the basement of the home during the marriage. Wife cared for the inside of the home, while husband "took care of the outside of the house."

Regarding the value of the Culpeper property, Alvin Henry, received as an expert in residential real estate appraisal, testified that the property value of the land and improvements as of the date of the hearing was $400,000, using the "market approach" method of appraising. Henry determined the value of the land itself to be $70,000. During the marriage, husband remodeled the basement of the home, which Henry determined added $12,000 in value to the property. Henry found that husband's post-separation improvements to the lattice under the deck and the fencing did not add value to the property.

James Ruffner, called as an expert in residential real estate appraisal, testified that he prepared an appraisal report of the property as part of husband's 2020 refinance application. Ruffner testified that under the "cost approach" method of appraising, the fair market value of the property in October 2020 was $346,000, which included the value of the land of $58,000. Under the "sales comparison approach," Ruffner testified that the fair market value of the property was $380,000 in October 2020.

Following the hearing, the circuit court issued a letter opinion, setting forth its decision on the equitable distribution of the marital equity in the Culpeper property. In reaching its decision, the circuit court "fully considered the testimony of every witness," took into account "any bias or

prejudice of the witnesses," and "carefully observed witnesses and their demeanors and made determinations concerning their credibility." The circuit court also "thoroughly reviewed the pleadings . . . and exhibits" and considered the "arguments of counsel."

In determining equitable distribution of the marital equity in the Culpeper property, the circuit court "considered each and every statutory factor in Code § 20-107.3(E) as to which evidence was presented." The circuit court found that husband earned the majority of the household income during the marriage, contributed the land upon which husband constructed the marital residence, and maintained the outside of the residence "including, without limitation, remodeling the basement, gra[d]ing the driveway and adding a home hair salon for [wife]." The circuit court found that wife assumed responsibility for getting the children ready for school each day and "maintained responsibility for the household tasks including, without limitation, cooking, cleaning and laundry." The circuit court determined that the parties were married for four years and were both in good physical and mental health. Wife admitted to committing adultery twice, in 2017 and 2020. The circuit court noted the mortgage on the marital residence was titled only in husband's name and that the mortgage balance was $258,500.

Regarding the value of the Culpeper property, the circuit court considered the testimony of both Ruffner and Henry and valued the property at $365,000 with the land comprising $58,000.[1] The circuit court classified the property as hybrid, as the parties agreed that the land was husband's separate property. The circuit court stated that only husband's name was on the contract to build the house and deed of trust, wife had paid no closing costs, and the residence had always been titled in husband's name alone. The circuit court noted that wife argued for the application of the *Brandenburg* formula to the hybrid equity in the marital residence.[2] The circuit court, however,

---

[1] The circuit court did not rule on husband's motion for an alternate valuation date.

[2] *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. Ct. App. 1981).

found that "Virginia Appellate Courts have emphasized that other methods may be equally acceptable," including those outlined in *Keeling v, Keeling*, 47 Va. App. 484 (2006), and *Rinaldi v. Rinaldi*, 53 Va. App. 61 (2008). The circuit court stated that it had considered all of the factors in Code § 20-107.3(E) and ordered that husband "retain the marital residence as his sole and separate property." The circuit court ordered husband to remit to wife $47,500, within six months, for wife's marital share of the equity in the residence.

Wife filed a motion for reconsideration, which the circuit court denied. The circuit court entered a final decree of divorce on August 17, 2022. Wife appeals.

## ANALYSIS

On appeal, wife argues the circuit court erred in its equitable distribution of the marital residence. Wife first argues that the circuit court erred in determining the value of the Culpeper property. Wife also contends that the circuit court erred in calculating the parties' respective shares in the Culpeper property and failed to quantify the values of the separate share and the marital share of the Culpeper property.

We will not overturn a circuit court's equitable distribution award absent "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." *Wynnycky v. Kozel*, 71 Va. App. 177, 193 (2019) (quoting *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764 (2014)). "Our use of this deferential standard of review 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

Code § 20-107.3 requires a court effecting an equitable distribution to proceed in an orderly fashion. Specifically, it must (1) "classify the property," (2) "assign a value to the property," and (3) "distribute[ ] the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)." *Sobol v. Sobol*, 74 Va. App. 252, 273 (2020) (quoting *Fox v. Fox*, 61 Va. App. 185, 193 (2012)). In determining the value of all property of the parties, the court "shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue." Code § 20-107.3(A).

From the outset, wife argues the circuit court erred in assigning a value of $365,000 to the Culpeper property. "A trial court has broad discretion to determine the value of assets." *Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 556 (2004). "[T]he particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." *Howell v. Howell*, 31 Va. App. 332, 339 (2000). Because valuation is heavily fact-dependent, "we give great weight to the findings of the trial court." *Id.* "In sum, 'the value of property is an issue of fact, not law.'" *Hoebelheinrich*, 43 Va. App. at 557 (quoting *Howell*, 31 Va. App. at 340); *see also Patel v. Patel*, 61 Va. App. 714, 722 (2013) (same).

In reaching the value amount of $365,000, the circuit court stated that it had "considered the testimony of both Ruffner and Henry," both of whom are experts in residential real estate appraisals. "[E]xpert testimony is the most expedient, and, in fact, the preferable method for [valuing marital property]." *Koons v. Crane*, 72 Va. App. 720, 740-41 (2021) (alterations in original) (quoting *Stratton v. Stratton*, 16 Va. App. 878, 883 (1993)). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." *Layman v. Layman*, 62 Va. App. 134, 137 (2013) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). "Further, the fact

finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert." *Street*, 25 Va. App. at 387. Moreover, the court may "choose among conflicting assessments of value as long as its finding is supported by the evidence." *McDavid v. McDavid*, 19 Va. App. 406, 413 (1994).

Here, the circuit court stated that its determination of the value of the Culpeper property was as of the date of the evidentiary hearing. The court was not required to accept Henry's testimony that the value of the Culpeper property was $400,000, although his date of valuation was closer to the evidentiary hearing than Ruffner's valuation date. The circuit court assigned a value that was within the range of values given by the experts at the hearing, and the evidence supports an inference that the value of the property lies within this range. *See Zipf v. Zipf*, 8 Va. App. 387, 395 (1989) (affirming a circuit court's selection of value of stock within a range of conflicting expert opinions); *cf. Traylor v. Traylor*, 19 Va. App. 761, 764 (1995) (finding reversible error when circuit court assigned value to asset that was outside the range of values presented in evidence). Considering the deference we give to the circuit court to assess the credibility of expert witness testimony and to make findings of fact regarding the value of property, we cannot say that the circuit court was plainly wrong in valuing the Culpeper property at $365,000. Therefore, we do not disturb the circuit court's finding of fact regarding valuation of the Culpeper property.

Next, wife challenges the circuit court's calculation and division of the marital equity. The court determined that the Culpeper property was hybrid property and "[i]t is undisputed that the land is Husband's separate property and the improvements (other than the post-separation work) were marital." Wife argues that the circuit court erred in failing to explain "whether the court applied the *Brandenburg* formula, the *Keeling* formula, or some other formula." However, as the circuit court highlighted, this Court has "not adopted an exclusive method for determining how to apportion the increase in value [of a hybrid asset as between marital and] retraced separate property." *Martin v.*

*Martin*, 27 Va. App. 745, 753 (1998) (en banc). Here, the circuit court assigned a value of $365,000 to the Culpeper property, with the separate property of land comprising $58,000 of that amount. This leaves $307,000 of improvements upon the land. The circuit court found that, at the time of the hearing, the mortgage was titled solely in husband's name and had a balance of approximately $258,500. The circuit court awarded wife $47,500 for her marital share of the equity.

In reaching this amount, the circuit court explicitly considered "each and every statutory factor in Code § 20-107.3(E) as to which evidence was presented." "In reviewing an equitable distribution award on appeal, we have recognized that the [circuit] court's job is a difficult one, and we rely heavily on the discretion of the [circuit court] in weighing the many considerations and circumstances that are presented in each case." *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013) (quoting *Klein v. Klein*, 11 Va. App. 155, 161 (1990)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court[.]'" *Id.* at 450 (quoting *McDavid*, 19 Va. App. at 407). The circuit court's "discretion is limited only in that the circuit court must consider all of the factors in Code § 20-107.3(E)." *Fadness v. Fadness*, 52 Va. App. 833, 842 (2008). "If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." *Id.* "Virginia equitable distribution law 'does not establish a presumption of equal distribution of marital assets.'" *Sfreddo v. Sfreddo*, 59 Va. App. 471, 486 (2012) (quoting *Watts v. Watts*, 40 Va. App. 685, 702 (2003)). "The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property." *Mir v. Mir*, 39 Va. App. 119, 126 (2002) (alteration in original) (quoting *Gottlieb v. Gottlieb*, 19 Va. App. 77, 95 (1994)).

In this case, the circuit court explicitly examined the factors in Code § 20-107.3(E). Significantly, the circuit court considered that husband "earned the majority of the familial income during the marriage" and that husband's "income greatly contributed to the acquisition, care and

maintenance of the marital residence." The circuit court acknowledged that wife "maintained responsibility for the household tasks including, without limitation cooking, cleaning and laundry." The circuit court determined that husband "more than equally contributed to the maintenance of the marital property through remodeling the basement, including, without limitation, adding a fourth bedroom and a home hair salon" for wife. Based on the record, and because Virginia equitable distribution law does not contain a presumption of equal distribution of marital assets, *Sfreddo*, 59 Va. App. at 486, we find that the circuit court did not abuse its discretion in its division of the equity of the Culpeper property.

Finally, husband requests an award of appellate attorney fees and costs expended in this matter. The decision to award attorney fees and costs incurred on appeal is within the sound discretion of the appellate court. *See* Rule 5A:30; *O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). The Court's decision is not limited to whether a party prevailed on appeal but considers the equities of the case. *See Wright*, 61 Va. App. at 470 (quoting *O'Loughlin*, 23 Va. App. at 695). Having thoroughly reviewed the record on appeal, we decline to award appellate attorney fees in this matter.

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*