COURT OF APPEALS OF VIRGINIA


Present:    Judges Clements, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


JOAN SHERMAN
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0853-07-4                      JUDGE JAMES W. HALEY, JR.
                                                          MARCH 4, 2008
WILLIAM H. SHERMAN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

        David L. Duff (Alanna C.E. Williams; The Duff Law Firm, on brief),
        for appellant.

        Gerald R. Curran (Hope F. Rosen; Shoun, Bach, Walinsky & Curran,
        P.C., on brief), for appellee.


INTRODUCTION

        Joan Sherman (wife) maintains the trial court erred:  (1) in failing to recognize her

separate contributions to acquisition of the marital home, and thus failing to properly apportion

her separate interest in the same, (2) in equally dividing all marital debt, (3) in failing to award

spousal support, (4) in failing to grant her an interest in a portion of a pension buy-back

purchased with marital funds, and (5) in failing to grant her attorney's fees.  We reverse and

remand on the first three assignments of error and affirm as to the latter two.

FACTS

        We recite those facts necessary for resolution of the issues raised.

        The parties married in 1983 and separated on August 30, 2005.  The marriage produced

two children, now adults.

---

        [*]  Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 1984, the parties purchased a home in Massachusetts with a $20,000 down payment. Wife maintains $10,000 of that down payment was a gift to her from her father, James Palmerini. Palmerini testified as to the gift. William H. Sherman (husband) testified the entire down payment came from marital funds. Neither party was able to produce documentation such as deposit slips or closing statements as to this transaction.

In 1996, the parties moved to Virginia and used the proceeds from the sale of the Massachusetts residence to purchase a home in Virginia. Wife and Palmerini testified the latter had again given wife $10,000 as a gift towards this purchase. Husband acknowledged this "gift," but on direct examination claimed it was paid back. Husband provided no documentation supporting that position. On cross, however, husband admitted "he had never talked to Mr. Palmerini about the $10,000 gift." The loan application signed by the parties shows "gift" as a source of funds for the purchase, and husband acknowledges the $10,000 was "wired into my-our account" by Palmerini.

Prior to the marriage, husband spent five years and two months in the Marine Corps. Husband worked for the post office from 1983-1990 as a carrier, and from 1990-2002 as an executive. In 2002 he went to work for the U.S. General Services Administration as a national accounts executive. In that position he was required to travel extensively and was given a U.S. government credit card for these expenses. Husband has for years suffered from alcohol and painkiller drug addiction, which required hospitalization in 2004. Because of these problems, husband, unknown to wife, scheduled trips, hotels, etc. using his government credit card, but did not take these trips because of his addiction, and failed to cancel reservations made. The U.S. government demanded he repay $24,000 of the government credit card debt incurred. Husband finally revealed this obligation to wife. With interest and penalties, that sum ultimately grew to $38,000. Husband unilaterally withdrew money from a marital thrift savings account to meet his

obligation, but, after wife protested because of tax consequences, husband returned them. Using the parties' home equity line of credit, husband repaid the $38,000. But, husband contended, he gave wife money from mutual funds to reimburse this obligation. Husband testified: "I used the mutual fund to pay [wife] the $24,000 I spent in credit card debt. I used the home equity loan to pay back credit cards." But documentation showed the funds had increased, not decreased, during the relevant period. The home equity loan was taken out on April 5, 2004. Husband acknowledges on brief that both "parties testified that [the original] $24,000 in credit card debt was paid from the home equity line of credit." The marital residence thus remains encumbered by a mortgage, a portion of which is attributable to this expenditure.

It is undisputed that $3,156 was taken from marital funds to allow husband to "buy-back" five years of his Marine Corps pension, that is, for that sum an additional five years was credited to the five years and two months he had spent in the Marine Corps prior to marriage. No evidence was offered by wife, however, as to the value or percentage of that portion of the total Marine Corps pension attributable to expenditure of marital funds in its acquisition.

Wife is fifty years old and worked during the majority of the marriage as a registered nurse. She currently works thirty-six hours per week, with a gross monthly income of $5,600, or $67,000 per year. Husband, fifty-one, testified he is in good physical and mental health. He has gross monthly income of $9,500, or $115,000 per year, from his job with the General Services Administration. Wife claimed a monthly deficit of $2,600, comparing her net income of $3,000 per month against expenses equivalent to her gross monthly income of $5,600. Wife has borrowed $15,000 from her parents for living costs. Husband presented an expense statement showing a monthly deficit of $15,000.

The trial court made no findings of fact from the bench after completion of the second day of the hearing on September 13, 2006. Rather, that court stated: "I'll give you a letter of opinion, hopefully within ten to twelve days."

Approximately four months later, by letter opinion dated January 11, 2007, the trial court ruled. The contents of the letter opinion, where relevant, will be set out in the analysis below.

ANALYSIS

A. The Marital Residences

The opinion letter of January 11, 2007 makes no reference whatsoever to the issue of the purported gifts from Palmerini to wife towards down payment on either the purchase of the home in Massachusetts or the subsequent purchase in Virginia. The trial court simply concluded the marital home was " joint marital property and is to be sold and the proceeds split equally between the parties."

With respect to the alleged $10,000 gift associated with the Massachusetts purchase, the parties directly contradicted one another as to whether such a gift had in fact been made, and neither offered any documentation supporting their respective positions. Accordingly, the trial court could have concluded wife failed to demonstrate that sum was a gift.

It is virtually undisputed, however, that Palmerini made a gift of $10,000 to his daughter for the Virginia purchase and that that gift was traced to that purchase, and the trial court erred in failing to so find. The trial court is reversed concerning this gift as to the Virginia property. Our decision necessarily means that the trial court erred in failing to apply either the Brandenburg or a related formula to determine wife's separate interest in the marital residence. See Keeling v. Keeling, 47 Va. App. 484, 624 S.E.2d 687 (2006); Martin v. Martin, 27 Va. App. 745, 501 S.E.2d 450 (1998) (*en banc*).

B.  <u>The Marital Debt</u>

Again, the trial court makes no reference to the original $24,000, and now $38,000, government credit card debt admittedly incurred because of husband's actions and admittedly paid for from an equity loan on a line on the marital residence.  With respect to pre-separation debt, the trial court simply states:  "All marital debts are to be paid from the sale of the marital residence."  On brief, husband maintains that "because these debts did not exist at the time of trial, the court was unable to distribute them."  We do not find this argument persuasive.

Code § 20-107.3(E)(7) mandates that the trial court consider the "debts . . . of each spouse, *the basis for such debts* . . . and the property which may serve as security for such debts." (Emphasis added).  The trial court did not do so.  It is undisputed that the $38,000 debt was generated by husband's negligence alone.  That sum did not enhance any marital assets; rather, it diminished the equity in the marital residence.  Husband's $38,000 debt is reflected in the mortgage balance to be paid off when the marital residence is sold.  That debt is husband's, and his share of proceeds should be reduced to pay for it.  Accordingly, the trial court is reversed on this issue and this matter remanded for entry of an order incorporating our decision.

C.  <u>Spousal Support</u>

In its letter opinion, the trial court correctly acknowledges that Code § 20-107.1 requires the court to make written findings supporting the grant or denial of a request for support in a contested case.  The following constitutes the total of the trial court's written findings attempting to meet that statutory mandate:

> Both Mr. and Mrs. Sherman contributed to the marriage, both monetarily and non-monetarily . . . . Neither party suffers from any mental, physical or age related conditions that will prohibit them from working . . . . Both parties have the skills, education, and training to be employed in a manner that affords . . . the same or comparable standard of living enjoyed throughout the marriage.  And both parties are currently employed consistent with

those levels of skill, education and training.  Therefore the Court finds an award of support is not warranted at this time . . . .

Because of our rulings with respect to the marital residence and marital debt in equitable distribution, we reverse the trial court as to the issue of spousal support and remand.  See Code § 20-107.1(E)(8); Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156-57 (2005) (*en banc*); Mitchell v. Mitchell, 4 Va. App. 113, 121, 355 S.E.2d 18, 23 (1987).

We note that on remand the trial court should also more thoroughly explain how it applied the factors of Code § 20-107.1(E).  Code § 20-107.1(F) states that in disputed cases, "any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order."  In Robinson v. Robinson, 50 Va. App. 189, 196, 648 S.E.2d 314, 317 (2007), we held subsection F imposes a mandatory duty for the circuit court, in its written analysis, to "provide . . . facts pertaining to [the] particular case and the evidence presented at trial."

### D.  The Pension Buy-Back

In its letter opinion, the trial court simply divides each party's pension equally.  The court continues:  "Mrs. Sherman is not entitled to compensation for the marital funds used to buy-back Mr. Sherman's military service time for his pension."

Code § 20-107.3(A)(2) states in part that marital property includes "that portion of pensions . . . acquired . . . during the marriage."  It is undisputed that five years and two months of husband's Marine Corps pension was acquired prior to marriage.  It is likewise undisputed that marital funds were used to acquire five additional years of that pension during the marriage.  The acquired portion of the pension was marital.  That being said, the burden rested upon wife to offer sufficient evidence for the trial court to determine what percentage of the Marine Corps pension was marital or the value of the marital share.  See Torian v. Torian, 38 Va. App. 167,

- 6 -

177, 562 S.E.2d 355, 360 (2002). She did not do this, and for that reason her assignment of error is denied. See Gamer v. Gamer, 16 Va. App. 335, 343-44, 429 S.E.2d 618, 624 (1993).[1] "When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987).

## E. Attorney's Fees

The decision on whether to award attorney's fees is committed to the trial court's discretion. Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). We affirm absent an abuse of discretion. Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001). The trial court may consider "the respective financial positions of the spouses and their degree of fault in precipitating the end of the marriage." Gilman v. Gilman, 32 Va. App. 104, 124, 526 S.E.2d 763, 773 (2000). Another factor is whether a party unnecessarily delayed the progress of the litigation and the costs of such delays. Northcutt v. Northcutt, 39 Va. App. 192, 200-01, 571 S.E.2d 912, 916 (2002). We perceive no abuse of discretion in this case in the trial court's failure to award attorney's fees to wife and so affirm.

## CONCLUSION

The trial court's equitable distribution award failed to account for the fact that wife's father gave a $10,000 gift towards the purchase of the marital home in Virginia. This means the court erred in failing to apply a formula to calculate wife's share of the marital home. The trial court also failed to consider that husband's negligence resulted in $38,000 debt paid from marital assets. Husband's portion of the money resulting from the sale of the marital residence should be reduced by $38,000 to account for this. Due to the above findings, we further reverse the trial court's spousal support determination. We affirm the trial court's decisions regarding husband's

---

[1] We note that wife assigns as error the failure of the trial court to award her "any portion" of the five-year buy-back. She does not assign as error any failure to reimburse her for marital funds expended in that acquisition.

buy-back of a portion of his military pension and attorney's fees.  Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>