COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Raphael and Lorish
Argued at Arlington, Virginia


WILLIAM KEITH SPAID

                                         MEMORANDUM OPINION[*] BY
v.       Record No. 0021-22-4                JUDGE LISA M. LORISH
                                         OCTOBER 25, 2022

ALISA B. SPAID


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Alexander R. Iden, Judge

Ann M. Callaway (Ann M. Callaway, P.C., on briefs), for appellant.

Peter W. Buchbauer (James J. McGuire; Lawrence P. Vance;
Buchbauer & McGuire, P.C., on brief), for appellee.


The circuit court awarded Alisa B. Spaid (wife) a divorce from William Keith Spaid

(husband). Husband challenges the court's rulings about equitable distribution, spousal support, and

attorney fees. For the following reasons, we affirm in part and reverse in part.

BACKGROUND[1]

Husband challenges the equitable distribution of a Toyota 4Runner, a Hyundai Sonata, and

the parties' home in Winchester, Virginia ("Winchester home"). Husband bought two of these

before the marriage: the Toyota and the Winchester home. As to the home, husband purchased it

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Starr v. Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

for $289,900, financing the purchase with a $231,900 mortgage loan and personally paying the remaining balance at closing.[2]

Husband and wife married in 2014. At the time, the mortgage loan had a remaining balance of $227,197.17. Neither husband nor wife added to or remodeled the Winchester home during their marriage, and husband has remained the sole titled owner of the home since he purchased it.

In 2015, the parties had a child diagnosed with Down Syndrome, and they agreed wife would stay home and care for the child. After this, husband's income paid "all the bills," including mortgage payments.[3] The couple also purchased personal property over the course of their marriage, including the Sonata.

Husband and wife separated in October 2020. Wife took a job and filed for divorce, requesting equitable distribution, spousal support, custody of the parties' child, child support, and attorney fees and costs. Upon wife's motion, the circuit court entered a *pendente lite* order awarding wife temporary spousal support in the amount of $816 per month. The circuit court also awarded wife temporary child support in the amount of $671 per month.

In May 2021, wife mailed husband interrogatories, requesting that husband provide information about any vehicles individually or jointly owned by the parties, including "[c]urrent loan balance[s]." Husband did not respond. Wife then moved to compel, and the circuit court ordered husband to answer the interrogatories by August 13, 2021. In husband's answers, he stated that the Sonata was marital property and that the current loan balance secured by the Sonata was

---

[2] Husband made a down payment on the Winchester home with $57,467.03 of his separate funds.

[3] In 2020, husband earned $75,877.

unknown. Later, two days before trial, husband supplemented his answer, claiming that the Sonata was separate property.[4]

In November 2021, the parties appeared before the circuit court for a bench trial upon wife's complaint for divorce. At the outset, wife objected to the introduction of evidence from husband's untimely supplement to his interrogatory answers, arguing it varied from his former answers. Husband argued that his supplemented answers "pertain[ed] to information" that wife already had and that "nothing [came] as a surprise." The circuit court ruled that because his supplement was untimely, husband was bound by his previous interrogatory answers which listed the Sonata as marital property with an unknown loan balance. In doing so, the circuit court found that "the things that were added, particularly the Sonata," were within "husband's knowledge" and not things wife would have had information about.

During the trial, the parties submitted exhibits, including an appraisal, stating that the Winchester home had a present fair market value of $485,000. Husband admitted that the value of the Winchester home increased due to the mortgage payments and "the economy." The parties agreed that mortgage payments made from marital contributions reduced the balance of the mortgage loan by $18,149 and that the loan had a remaining balance of $209,048.29 when the parties separated. And wife admitted that husband made further payments of $3,207 on the mortgage loan following their separation.

The parties requested that the circuit court determine the marital equity in the Winchester home using the *Brandenburg* formula[5] but disagreed as to the proposed calculations under the formula. Husband argued that the marital equity in the home was $18,000—the amount by which

---

[4] The record does not reflect whether husband's supplement included the balance of any loan used to purchase the Sonata.

[5] *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. Ct. App. 1981).

the mortgage loan had been reduced during the marriage. Husband further argued that "the passive appreciation in value of the separate property is [his] separate property." Wife argued that 21.7% of the total equity in the Winchester home was marital property, which she claimed totaled $60,657, because marital contributions constituted 21.7% of the parties' total investment in the Winchester home. Applying the *Brandenburg* formula, the circuit court held that the marital portion of the total equity in the Winchester home was $64,207.

As to the Toyota, wife submitted an exhibit stating that the Toyota was titled in husband's name and bought on November 16, 2010, before their marriage. Wife's exhibit added that the Toyota had a fair market value of $9,000 and claimed it as marital property. The Toyota was not specifically mentioned by either party at trial.[6] Though there was no evidence introduced about any loan secured by the Toyota or on any loan payments that had been made during the marriage, the circuit court found that "loan payments during the marriage create[d] a marital interest in the [Toyota]" and that the Toyota was marital property with a value of $9,000.

As for the Sonata, husband sought to introduce a "Hyundai finance statement" purportedly showing how much husband "owed" on the Sonata into evidence. Wife objected because the document had not been produced in response to discovery and argued that husband was bound by his interrogatory answer listing the loan balance as "unknown." The circuit court sustained wife's objection, ruling that "husband is bound by his answer to the interrogatory as it existed prior to the filing on Sunday." Husband objected to this ruling, arguing that he had already provided wife with his proffered documentary evidence along with his pretrial filings. Wife introduced exhibits, without objection, stating that the marital equity in the Sonata was $13,650. The circuit court held that the entire $13,650 equity in the Sonata constituted marital property.

---

[6] The circuit court admitted husband's answers to certain interrogatories as the court's exhibit in connection with its pretrial ruling. One of husband's answers lists the Toyota as separate property purchased in 2010 with a fair market value of $9,000.

Wife asked the circuit court to award her $750 per month in spousal support. In support of this request, wife testified that she had lived with her parents since separating from husband and that she intended to "go out . . . to live independently" with her children. Wife calculated her monthly net income as $555 and explained that, given her income, "finding a home in a price range for [her]self and two children is not going to happen." Rather, wife claimed that she had "been trying to save [the] support money" to "possibly put down on [her] own home." According to wife, she had saved about $9,000.

As to her expenses, wife testified that she did not have to pay for rent while living with her parents, that internet was her only current housing expense, and that she was "going to need to get health insurance."[7] Wife admitted that she had "no idea" what her future housing expenses, rent, mortgage, or health insurance would cost. In opposing wife's request for spousal support, husband argued that wife failed to prove her "need for spousal support" because she had saved the temporary *pendente lite* support. The circuit court subsequently ordered husband to pay wife $500 per month in spousal support "for an undefined period."

Following the trial, the circuit court awarded wife a divorce from husband. The circuit court also ordered husband to pay $4,186.25 toward wife's attorney fees and costs. Husband filed a motion for reconsideration, which the circuit court denied, and this appeal followed.

ANALYSIS

Husband contends that the circuit court erred in calculating the marital equity in the Winchester home, by ruling that the Toyota was marital property, by excluding evidence of the remaining balance of the loan secured by the Sonata, by awarding wife indefinite spousal support without any current need, and by awarding wife $4,186.25 for her attorney fees and costs.

---

[7] Wife was covered under husband's health insurance policy at the time of trial.

*A. Winchester Home*

We will not overturn a circuit court's equitable distribution award absent "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." *Wynnycky v. Kozel*, 71 Va. App. 177, 193 (2019) (quoting *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764 (2014)). "Our use of this deferential standard of review 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). A circuit court "by definition abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)). "[T]o the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Dixon*, 71 Va. App. at 718.

Husband argues that the circuit court erred by finding that wife was entitled to any increase in equity in the Winchester home "caused by market forces" because she did not present evidence that marital contributions affected those market forces or the increase in value. And he argues she did not present evidence of the value of the Winchester home on the date of the marriage.[8] Code § 20-107.3(A)(3)(a) provides in relevant part:

---

[8] Husband also argues that the circuit court erred by finding that wife was entitled to equity in the Winchester home without any evidence of the value of the home on the date of separation. Husband, however, submitted his proposed *Brandenburg* calculations based on the $485,000 present fair market value of the home. "A litigant is estopped from taking a position which is inconsistent with one previously assumed . . . in the course of litigation for the same cause of action." *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 414 (2012) (quoting *Burch v. Grace St. Bldg. Corp.*, 168 Va. 329, 340 (1937)); *see also Cody v. Commonwealth*, 68 Va. App. 638, 665 (2018) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."

In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

Although husband concedes that "mortgage payments made during the marriage were marital contributions"—and that the value of the Winchester home increased—he argues the mortgage payments "are irrelevant to the market-appreciation issue." Rather, husband contends that "[i]n the absence of any marital contribution to the market appreciation, [w]ife has no claim" to the increased equity in the home. Similarly, husband argues that wife "was required" to provide evidence of the value of the home on the date of their marriage to prove the marital interest in the equity of the home.

In essence, husband argues that he gets all of the benefit from an increase in value due to "market forces" unless wife can prove that marital contributions caused the appreciation. As the circuit court recognized, however, the Supreme Court of Virginia has rejected this argument. "Code § 20-107(A)(3)(a) does not require the non-owning spouse to prove causation"—rather, it "places the burden of *disproving causation* on the owning spouse, once the non-owning spouse makes a prima facie showing of . . . the contribution of marital property and an increase in value of the separate property." *David v. David*, 287 Va. 231, 241 (2014) (emphasis added). Given that (1) marital property contributed to payments on the Winchester home and (2) the home's value

_____

(quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006))). So we do not consider husband's argument on appeal.

- 7 -

increased, husband bore the burden to prove that "the increase in value or some portion thereof was not caused by contributions of marital property or personal effort." Code § 20-107.3(A)(3)(a).

Husband's general argument that the Winchester home increased in value due to "the economy" failed to meet this burden. As the circuit court found, husband did not offer any proof in support of his conclusion, let alone what amount of equity in the home was attributable to "the economy." Accordingly, husband failed to prove his separate interest in the equity of the Winchester home beyond the separate payments he made before the marriage and after the separation. If husband contends that evidence of the value of the Winchester home on the date of his marriage to wife would have proven that he had a greater separate interest in the equity of the home, it was husband's burden to introduce such evidence. *See David*, 287 Va. at 241.

Alternatively, husband contends that the circuit court erred in its *Brandenburg* calculations "by crediting [h]usband with only his cash paid at closing rather than the full acquisition cost of" the Winchester home. The *Brandenburg* formula is "one method for ascertaining the value of the separate and marital components of hybrid property in relation to the original contributions." *Rinaldi v. Rinaldi*, 53 Va. App. 61, 70-71 (2008) (quoting *Martin v. Martin*, 27 Va. App. 745, 753 (1998)). Directly opposite to husband's position, we have explained that "[a] strict application of the *Brandenburg* formula *does not take into account the extent to which the parties are obligated on a loan used to purchase the property*; it considers only the degree to which payment on that loan reduces the loan principal, thereby resulting in the acquisition of equity." *Keeling v. Keeling*, 47 Va. App. 484, 491 (2006) (emphasis added). Accordingly, the circuit court did not err by not crediting husband for the full acquisition cost, including the mortgage loan and closing costs, of the Winchester home in its *Brandenburg* calculations. For these reasons, we affirm the circuit court's judgment as to the equitable distribution of the Winchester home.

## B. Toyota

As to the equitable distribution of the Toyota, husband contends that the court erred by finding this vehicle was marital property. We agree. At trial, the only admitted evidence about the Toyota was one exhibit from wife[9] that listed the Toyota as marital property, titled in husband's name, bought before the marriage, and with a fair market value of $9,000.

Code § 20-107.3(A)(1) applies here as well. Like the Winchester home, the Toyota was purchased before the marriage, making it separate property—something wife concedes. But unlike the Winchester home, wife did not meet her burden to prove that any contributions of marital property were made to pay for the Toyota, or that the equity in the Toyota increased during the marriage. *See* Code § 20-107.3(A)(3)(a) ("[T]he nonowning spouse shall bear the burden of proving that (i) contributions of marital property . . . were made and (ii) the separate property increased in value.").

Wife argues that, notwithstanding husband's separate interest, the Toyota was "paid off during the marriage," as shown by the "Certificate of Title dated Nov. 29, 2016." But wife never introduced this certificate of title into evidence at trial. Thus, nothing in the record shows whether the purchase of the Toyota was secured by a loan, when that loan was paid off, or whether marital contributions were used to pay off the loan. Accordingly, the circuit court's finding that "[a]ll loan payments during the marriage create[d] a marital interest in the [Toyota]" and holding that the Toyota constituted marital property were without supporting evidence and abuses of discretion.

---

[9] In connection with its ruling on husband's failure to timely supplement his interrogatory answers, the circuit court admitted husband's answers to certain interrogatories as the court's exhibit. One of husband's answers lists the Toyota as separate property purchased in 2010 with a fair market value of $9,000.

Thus, we reverse the circuit court's holding that the Toyota was marital property and remand the case to the circuit court for further proceedings consistent with this opinion.[10]

## C. Sonata

Husband argues that the circuit court erred when it held him to his interrogatory answers and prevented him from introducing evidence at trial as to the balance of the loan used to purchase the Sonata. "The determination of whether to admit evidence 'rests within the sound discretion of the circuit court and will only be disturbed on appeal upon a showing of an abuse of discretion.'" *Stark v. Dinarany*, 73 Va. App. 733, 745 (2021) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). "Moreover, Rule 4:12(b) provides, 'If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just[.]'" *Id.* (alterations in original). "The Supreme Court has made clear that '[a] trial court generally exercises "broad discretion" in determining the appropriate sanction for failure to comply with an order relating to discovery.'" *Id.* (alteration in original) (quoting *Walsh v. Bennett*, 260 Va. 171, 175 (2000)). "When we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 745-46 (alteration in original) (quoting *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021)). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 746 (quoting *Galiotos*, 300 Va. at 11).

The record reflects that the circuit court ordered husband to answer wife's interrogatories by August 13, 2021. Husband answered that the current loan balance secured by the Sonata was unknown, and he never supplemented his answer to provide the balance. Notwithstanding his failure to supplement his answer, husband contends that the circuit court abused its discretion by

---

[10] Our reversal renders husband's sixth assignment of error moot, and we therefore do not consider its merits.

precluding evidence of the loan balance because he "provided the loan information to [w]ife . . . three (3) times pursuant to the court's pretrial order." Husband claims that he provided wife with the loan information on multiple occasions, less than a month before trial. As husband failed to provide wife with evidence on the loan balance until, at the earliest, a month before trial and over two months after the circuit court ordered him to do so, we hold that the circuit court did not abuse its discretion by precluding husband from offering such evidence at trial.

### D. Spousal Support

Husband argues that the circuit court erred by awarding wife $500 per month in spousal support indefinitely because the evidence failed to show "proof of need." "However, in determining whether to make an award of spousal support and in calculating the amount and duration of the award, Code § 20-107.1(E)(8) requires the circuit court to consider '[t]he provisions made with regard to the marital property under [Code] § 20-107.3,' the equitable distribution statute." *Stark*, 73 Va. App. at 754. "Because we here reverse in part the trial court's award of equitable distribution, our case law is clear that, on remand, the trial court will also have to thoroughly reassess its spousal support award and duration." *Id.* at 754-55. Thus we do not reach husband's assignments of error about the amount and the duration of the spousal support award. However, because husband relies on wife's alleged failure to provide "proof of need" as the reason for asking us to reverse the court's award of attorney fees, we observe that wife did in fact demonstrate evidence of need: she is the caregiver for a child with special needs and is therefore limited in her employment options, she has been living with her parents since the parties separated, and she testified that she cannot presently afford her own home.

### E. Circuit Court Attorney Fees

Husband argues that "[t]he trial court's award of attorney's fees to [w]ife was an abuse of discretion in light of [w]ife's inability to prove need." This sparse sentence is husband's only

- 11 -

argument on this assignment of error. "[A]n award of attorney's fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." *Stark*, 73 Va. App. at 755 (alteration in original) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *Conley v. Bonasera*, 72 Va. App. 337, 350 (2020) (alterations in original) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)). Wife presented evidence at trial that her attorney fees and costs totaled $15,387. The circuit court allowed wife an opportunity to submit an updated amount of fees incurred post-trial. Wife submitted an attorney fee affidavit showing that she had incurred an additional $4,475.25 in attorney fees and costs. Husband objected, arguing that the parties should be responsible for their own attorney fees and costs. Now husband contends—without citation to any authority[11]— that the court abused its discretion because wife failed to "prove need." Considering all the circumstances, we cannot say the circuit court abused its discretion in awarding wife $4,186.25, a portion of her attorney fees and costs.

### F. Appellate Attorney Fees

Wife requests attorney fees and costs incurred in this appeal. *See O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "This Court has discretion to grant or deny attorney's fees incurred on appeal." *Stark*, 73 Va. App. at 757. "In making such a determination, the Court considers all the equities of the case." *Id.*; *see* Rule 5A:30(b)(2)(C). After considering the record before us and the equities of the case, including our reversal in part, we deny wife's request for appellate attorney fees and costs.

---

[11] *See* Rule 5A:20(e); *see also Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) ("Under [the rule], an appellant must supply this Court with principles of law and authorities in support of a particular argument. A significant omission in this regard will result in waiver of the argument on appeal.").

CONCLUSION

For these reasons, we affirm the circuit court's judgment on its calculation of the marital equity in the Winchester home and the Sonata, as well as its award of attorney fees to wife. We reverse the circuit court's ruling that the Toyota constituted marital property or had marital equity. We remand the case to the circuit court for reconsideration of the equitable distribution award consistent with this Court's opinion. Furthermore, because we are reversing the circuit court on one of its decisions about equitable distribution and remanding this case for reconsideration of that decision consistent with this opinion, the circuit court must also reassess its award of spousal support upon remand.

*Affirmed in part, reversed in part, and remanded*.